Filed 5/4/15  In re Mackenzie D. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re MACKENZIE D., a Person Coming Under the Juvenile Court Law. | B257853 |
| | (Los Angeles County Super. Ct. No. DK05199) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent.<br><br>    v.<br><br>MICHAEL D.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Philip L. Soto, Judge.  Affirmed.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel for Plaintiff and Respondent.

Appellant Michael D. (father) appeals from the juvenile court's findings and orders establishing dependency jurisdiction over his daughter Mackenzie (born November 2013) and removing her from his custody. Father contends there was insufficient evidence to support the juvenile court's jurisdictional findings under Welfare and Institutions Code section 300, subdivision (b)[1] that his history of cocaine abuse and his relapse into methamphetamine use during a period of time when he was the primary caretaker of his then infant daughter placed her at risk of physical harm. We affirm the juvenile court's jurisdictional and dispositional orders.

## BACKGROUND

**Detention and section 300 petition**

On April 15, 2014, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging emotional abuse by father. The reporting party stated that father admitted using methamphetamine. When the Department's social worker responded to the home, both parents denied any recent drug use, but both admitted to a substance abuse history. Mackenzie's mother Jennifer B. (mother)[2] claimed she had been sober for several years, and father stated he had been sober for a year and a half. Neither parent appeared to be under the influence at the time of the social worker's visit, Mackenzie showed no signs of abuse or neglect, and the family home appeared appropriate.

In a follow up interview a month later, mother reiterated that she had been sober for five to six years. She admitted to past methamphetamine use but said she had been sober since completing an inpatient treatment program. Father said he had been sober for two years, that cocaine had been his drug of choice, and that he had also achieved sobriety through an inpatient treatment program. Neither parent appeared to be under the influence, and the family home was well maintained. Both parents agreed to drug test.

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal.

Father tested positive for amphetamine and methamphetamine and admitted he had relapsed a week earlier.

In a May 19, 2014 interview with the social worker, father's therapist, who had been treating father for the past few months, stated that father was Mackenzie's primary caregiver and stayed home with the child while mother was at work. Father had disclosed to the therapist that he had a one-time relapse approximately one month earlier, but he was out of the home and not supervising Mackenzie at the time.

In a May 21, 2014 interview, father stated that he began using cocaine at the age of 10, and that he was sober until approximately five and a half years ago, when he used cocaine for a two-week period. He voluntarily enrolled in an inpatient treatment program from 2007 to 2008 and had been sober until he relapsed approximately a week and a half before the interview. The social worker questioned father's veracity, as father's therapist had said father disclosed relapsing a month earlier. Father denied using methamphetamine within the past month and said the therapist had misunderstood him. The social worker also pointed out that father had tested positive four days after his reported last use, and that methamphetamine stays in a person's system for up to three days.

Before a second scheduled drug test, father admitted he had continued using methamphetamine. Father enrolled in a treatment program and agreed to a safety plan under which he would move out of the family home where Mackenzie would remain with mother.

On May 27, 2014, the Department filed a section 300 petition on behalf of then five-month-old Mackenzie based on allegations that father had a 36-year history of illicit drug use and was currently abusing methamphetamine, including during times when he was caring for Mackenzie.

At the initial detention hearing, the juvenile court found father to be Mackenzie's presumed father and detained her from father's custody. The court released Mackenzie to mother and ordered that father live outside the family home.

3

**Jurisdiction and disposition**

In its June 26, 2014 jurisdiction/disposition report, the Department reported that both parents admitted to having criminal records. Father admitted to convictions for drug possession, illegal possession of a deadly weapon and second degree robbery. He served a total of eight years in prison.

Both parents were in their forties and had adult children from previous relationships. Mother and father met while in a drug treatment program, and both wanted to remain a family. Mother was currently enrolled in college, and father had a college degree. Neither parent was employed.

Mother acknowledged father's long history of drug abuse. She insisted she was unaware of father's recent relapse and denied that father's drug use impaired his ability to parent Mackenzie.

In a June 16, 2014 interview, father admitted struggling with drug abuse since childhood and to using methamphetamine at a friend's home on May 27, 2014. He denied using drugs in the family home or while caring for Mackenzie. Father maintained mother was unaware of his recent relapse.

At the June 26, 2014 jurisdiction/disposition hearing, the juvenile court received the Department's reports in evidence. No additional testimony or evidence was presented.

After hearing argument from counsel for the parties, the juvenile court found the following allegations regarding father under section 300, subdivision (b) to be true:

> "[Father] . . . has a 36 year history of illicit drug use, including cocaine and is a current user of methamphetamines, which renders the father incapable of providing regular care of the child. On prior occasions in May of 2014, the father was under the influence of methamphetamines, while the child was in the father's care and supervision. On 5/16/2014, the father had a positive toxicology screen for methamphetamines and amphetamines. Such illicit drug use on the part of the father and the mother's failure to protect the child endanger the child's physical health and safety and place the child at risk of physical harm, damage and failure to protect."

4

The juvenile court sustained the petition, declared Mackenzie a dependent of the juvenile court, and ordered her removed from father's custody and released to mother.

**DISCUSSION**

## I. Standard of review

We review the juvenile's court's jurisdictional findings under the substantial evidence standard. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) Under this standard, we review the record to determine whether there is any reasonable, credible, and solid evidence to support the juvenile court's conclusions, and we resolve all conflicts in the evidence and make all reasonable inferences from the evidence in support of the court's orders. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.) We review the juvenile court's selection of a dispositional order for a minor under the substantial evidence standard. (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 145-146.)

## II. Jurisdiction

### A. *Jurisdiction premised on substance abuse*

Section 300, subdivision (b) accords the juvenile court jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

Section 300 does not define the term "substance abuse," and courts have applied various standards in an effort to formulate a workable definition. In *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*), Division Three of this court proposed a definition of substance abuse based on the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000) (DSM-IV-TR). (*Id.* at p. 765.) The court in *Drake M.* held that "a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem . . . as defined in the DSM-IV-TR." (*Drake M.*, at p. 766.)

5

The DSM-IV-TR defines "substance abuse" as "'[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12-month period:  [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[; ¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights).' (DSM-IV-TR, p. 199.)" (*Drake M., supra*, 211 Cal.App.4th at p. 766.)

The court in *Drake M.* reasoned that although jurisdiction under section 300, subdivision (b), may be premised on a finding of substance abuse, such a finding does not necessarily mean that the parent is unable to provide regular care resulting in a substantial risk of harm to the child.  (*Drake M., supra*, 211 Cal.App.4th at p. 765.)  The court noted that "'[c]ases finding a substantial physical danger tend to fall into two factual patterns. One group involves an *identified, specific hazard* in the child's environment -- typically an adult with a proven record of abusiveness.  [Citations.]  The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety.  [Citations.]' [Citation.]" (*Id.* at pp. 766-767.)  With respect to the second group, the court in *Drake M.* held that "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*Id.* at p. 767.)

Recognizing the *Drake M.* court's definition of substance abuse "as a generally useful and workable definition . . . for purposes of section 300, subdivision (b)," Division Seven of this court, in *In re Christopher R.* (2014) 225 Cal.App.4th 1210 (*Christopher R.*), nevertheless concluded that it was "not a comprehensive, exclusive

6

definition mandated by either the Legislature or the Supreme Court" and was "unwilling to accept . . . [the] argument that only someone who has been diagnosed by a medical professional or who falls within one of the specific DSM-IV-TR categories can be found to be a current substance abuser.  [Citations.]"  (*Id.* at p. 1218.)[3]  The court in *Christopher R.* held that a mother's "use of cocaine while in the final stage of her pregnancy, combined with her admitted use of the drug in the past and her failure to consistently test or enroll in a drug abuse program, justified the juvenile court's jurisdiction over her children."  (*Id.* at pp. 1218-1219.)  The court further held that because the children were under the age of seven at the time of jurisdiction hearing, or children of "tender years" as described by the court in *Drake M.*, "'the finding of substance abuse is prima facie evidence of the inability of the parent or guardian to provide regular care resulting in a substantial risk of harm.' [Citations.]"  (*Christopher R.*, at p. 1219.)

### B.  *Substantial evidence supports the jurisdictional finding*

Substantial evidence supports the juvenile court's jurisdictional finding that Mackenzie was at risk of harm as the result of father's substance abuse.  That evidence includes father's admissions that he had a 36-year history of drug abuse and prior convictions for drug possession, illegal possession of a deadly weapon, and second

---

[3]    The court in *Christopher R.* noted that the DSM-IV-TR definition of "substance abuse" adopted by the court in *Drake M.* "has been replaced in the more recent Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), published in May 2013 after the decision in *Drake M.*, by a more broadly defined classification of 'substance abuse disorders,' which combines substance abuse and dependence.  DSM-5 identifies 11 relevant criteria, including cravings and urges to use the substance; spending a lot of time getting, using, or recovering from use of the substance; giving up important social, occupational or recreational activities because of substance use; and not managing to do what one should at work, home or school because of substance use.  The presence of two or three of the 11 specified criteria indicates a mild substance use disorder; four or five indicate a moderate substance use disorder; and six or more a severe substance use disorder.  (American Psychiatric Association, Highlights of Changes from DSM-IV-TR to DSM-5 <http://www.dsm5.org/Documents/changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf> [as of April 14, 2014].)"  (*Christopher R., supra*, 225 Cal.App.4th at p. 1218, fn. 6.)

7

degree robbery; his relapse into methamphetamine use, which he concealed from mother and the social worker; his positive drug test for amphetamine and methamphetamine on May 16, 2014; his admitted use of methamphetamine on May 27, 2014; and his role as Mackenzie's primary caregiver.

The juvenile court found that that father's maladaptive behavior, including his admitted concealment of his methamphetamine use, and his chronic, long-term drug use constituted recurrent substance abuse as defined in the DSM-IV-TR. Substantial evidence supports that finding. Even if father's conduct fell outside of the DSM-IV-TR definition, however, his admitted use of methamphetamine during a period of time in which he was Mackenzie's primary caregiver, his concealment of his drug use, and his long history of drug abuse, justified the juvenile court's exercise of jurisdiction over Mackenzie. (*Christopher R., supra*, 225 Cal.App.4th at pp. 1218-1219.)

Because Mackenzie was only six months old at the time of the jurisdiction hearing -- a child of "tender years" as described by the court in *Drake M.* -- the finding of substance abuse is prima facie evidence of father's inability to provide regular care for her, resulting in a substantial risk of harm. (*Drake M., supra*, 211 Cal.App.4th at p. 767.) Father provided no evidence to rebut the evidentiary presumption.

*In re Destiny S.* (2012) 210 Cal.App.4th 999, and *In re David M.* (2005) 134 Cal.App.4th 822, on which father relies as support for his position, are both distinguishable. *Destiny S.* involved an 11-year-old child, and although the mother's drug use was undisputed, there was no evidence that the mother had neglected the child. (*In re Destiny S., supra*, at p. 1004.) In the instant case, Mackenzie was an infant who required constant care and supervision, and father's substance abuse was prima facie evidence of his inability to provide such care.

In *David M.*, the mother had been diagnosed three years prior to the detention of her two and a half year old and two-month-old children as being delusional and impaired as the result of a long history of marijuana use. She had never been hospitalized or involuntarily committed for her condition, and there had been no current evaluation of her mental condition. (*David M., supra*, 134 Cal.App.4th at pp. 826-827, 829.) There

8

was evidence of only a one-time use of marijuana during mother's most recent pregnancy, and the social worker testified that there was no new information regarding mother's mental condition and no evidence that mother was unable to care for the children. (*Id.* at pp. 827-827, 829.) Here, in contrast, father not only had a long history of substance abuse, he had used methamphetamine on more than one occasion during a period in which he was Mackenzie's primary caregiver.

Substantial evidence supports the juvenile court's jurisdictional findings under section 300, subdivision (b).

## III. Disposition

Father also challenges the order removing Mackenzie from his custody on the ground that there was insufficient evidence that his substance abuse placed Mackenzie at risk of serious harm.[4] Father's long history of substance abuse, his relapse into methamphetamine use during a period of time when he was the primary caregiver for an infant child, and his concealment of his methamphetamine use from mother and the social worker constitute substantial evidence in support of the juvenile court's removal order.

### DISPOSITION

The orders establishing juvenile court jurisdiction over Mackenzie and removing her from father's custody are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
                                                    CHAVEZ

We concur:

_____, P. J.        _____, J.
BOREN                                                              HOFFSTADT

---

**4**      The Department argues that father forfeited any appellate challenge to the removal order by raising no objection or argument to that order in the juvenile court below. We view father's argument at the outset of the combined jurisdictional and dispositional hearing that the petition should be dismissed for lack of an evidentiary nexus between father's substance abuse and current risk of harm to the child as a challenge to the juvenile court's jurisdictional and dispositional orders and accordingly address the merits of father's arguments.